## THE BOROUGH OF MADISON

### v.

## THE MORRISTOWN GASLIGHT COMPANY.

[Filed May 7th, 1902.]

1. *P. L. of 1855 p. 74 § 1* provides that the Morristown Gaslight Company shall have power to make and sell gas for the purpose of lighting the streets, &c., of Morristown "and its vicinity." Section 2 gives it power to lay its gas pipes and erect posts, &c., in the streets of Morristown "and its vicinity."—*Held*, that under this act the corporation was given power to lay its gas pipes in the streets of the borough of Madison, the outer limits of which at that time were not more than a mile distant from Morristown, and nearer than any other of the neighboring villages, it being included in the term "in its vicinity."

2. This authority was not repealed by *Gen. Stat. p. 1613 §§ 30, 31*, authorizing gas companies to extend their main pipes to any neighboring municipality, provided the common council thereof grant permission.

3. The Borough act of 1897, which provides that the borough council may prescribe the manner in which corporations or individuals may exercise any privilege granted to them in the use of any street, authorizes the regulation, but not the prohibition, of such privileges; and an ordinance giving the street committee of a borough arbitrary power to refuse a permit to tear up the streets for the purposes of laying gas pipes is invalid.

*Mr. Charles A. Rathbun,* for the complainant.

*Mr. Willard W. Cutler* and *Mr. Joseph Cross,* for the defendant.

STEVENS, V. C.

The bill is filed to enjoin the defendant company from laying its gas pipes in the streets of the borough of Madison. The gas company claims the right to do so under its charter. *P. L. of 1855 p. 74.* The first section of the act provides that the corporation

"shall have power to make and sell gas * * * for the purpose of lighting the streets, buildings, manufactories and other places situated in Morristown *and its vicinity.*"

The second section provides that

"the said corporation shall be empowered to lay down their gas pipes and to erect gas posts, burners and reflectors in the streets, alleys, lanes, avenues and public grounds of Morristown *and its vicinity,* and the dwellings, stores and other places situated therein."

The question is whether the company has, under these two sections, authority to lay its pipes in the streets of Madison.

At the time of the passage of·the act Morristown was unincorporated, as was also Madison. The former lay in Morris township and the latter in the adjoining township of Chatham. By reference to the census of 1850, found in the appendix to the pamphlet laws of 1852, it appears that Morris township then had a population of four thousand nine hundred and ninety-two and Chatham township a population of two thousand four hundred and sixty-nine. Morris township then, as now, covered a comparatively small area, not much more than six miles in its widest part, and Morristown was not far from its centre, but nearer to its eastern boundary line which abutted on Chatham township. At the present time, if we disregard corporate lines, it may be said that the town reaches out nearly to this boundary. In 1855 it did not reach so far, but the limits of the somewhat spread out village must have approached to within a mile of it. The centre of Madison, on the other hand, was less than two miles east of the division line between the two townships and its westerly boundary must have been not more than a mile and a half from the township division line, so that the westerly limits of Chatham could not have been more than two and a half miles from the easterly limits of Morristown. The distance between the two places was less than the distance between Morristown and any other of the neighboring villages. Now it seems to me that this being the situation, the legislature must have intended to include in the term "vicinity" a place situated as Madison was. It is true that any ambiguity in the terms of a grant must operate against the corporation and in favor of the public, and that the

corporation can claim nothing that is not clearly given. *Pennsylvania Railroad Co.* v. *National Railroad Co., 8 C. E. Gr. 455.* But in the grant of power words must receive their ordinary and proper meaning, and if, giving them this meaning, the power is in terms conferred, the court has no right to cut it down.

Giving to the language found in its act of incorporation a reasonable interpretation, it seems clear that the company has authority to lay its pipes in the streets of Madison. The word "vicinity," if we give it any meaning at all, must refer either to the farming district around Morristown or to one or more of the surrounding villages. In terms, it plainly refers to the latter, for it speaks in its first section of the streets, buildings and manufactories in Morristown and in its vicinity. A vicinity which contains streets, buildings and manufactories is not a farming district. So in the second section the same idea is even more apparent. The company is authorized to lay down pipes in the streets, alleys, lanes, avenues and public grounds, not only of Morristown—that is, of all Morristown—but of the vicinity of Morristown and in the dwellings, stores and other places situated therein. A vicinity containing these things is at least a village. This interpretation of the language used accords not only with the literal meaning of the sentence, but with the probable intention. It is not to be supposed that the legislature thought it possible that a gas company, organized for gain, would desire or be able to lay its pipes along the country roads (not mentioned in the act) radiating from Morristown, for the mere purpose of supplying isolated farm houses.

Vicinity is defined by Webster as "that which is near or not remote." Certainly to a legislature speaking from Trenton, sixty miles distant, Madison would be understood as being in the vicinity of—near—not remote from Morristown. In Jacob's law dictionary the term *"vicinetum"* is defined as *"locus quem vicini habitant,"* and in Burrill's law dictionary it is said to have been anciently understood of the same vill or the parts adjacent, but in later law of the same county.

In Crabb's synonyms "neighborhood" is said to signify the place which is nigh, that is nigh to one's habitation; vicinity, from *vicus* a village, to signify the place which does not exceed

in distance the extent of a village. Under any of these definitions Madison is in the vicinity of Morristown. When the act itself tells us that this vicinity may contain streets, alleys and lanes, dwellings and stores, it would seem as if all reasonable doubt was removed.

So far as decided cases may be thought to illustrate this subject, they indicate the correctness of my conclusion. In *Jersey City* v. *Hudson, 2 Beas. 420,* the act which enabled Jersey City to obtain water authorized the mayor and common council to take and convey unto Jersey City and *places adjacent thereto* such portion of the water of the Passaic as might be needed. Hoboken was supplied and no intimation is found in the case that this action was questioned. Hoboken was then a village separated by an almost impassable marsh from Jersey City. In *Timmerman* v. *Dever, 52 Mich. 36,* one physician covenanted with another that he would not practice in the city of Hastings or its vicinity. The court thought that the word "vicinity" might reasonably be construed as embracing the surrounding territory for a distance of ten miles from the corporate boundaries. In *Langley* v. *Barnstead, 63 N. H. 246,* it was held, on the construction of a statute providing for a division of the expense of highways, that towns might be situated in the vicinity of each other though not adjacent.

I think, therefore, that the charter of the gas company authorizes it to lay its pipes in Madison.

It is argued, however, that if it did so originally the authority is by implication repealed by the act of 1879. *Gen. Stat. p. 1613 §§ 30, 31.* This is an enabling act authorizing gas companies to extend their main pipes to any neighboring municipality, provided the common council thereof grant permission. The act does not conflict with the provision of the charter and does not contain any repealer. It is settled law that a general statute will not supersede or repeal a statute conferring special privileges unless there be clear language expressive of such an intent. *North Hudson County Railway* v. *Hoboken, 12 Vr. 78.* No such intent is discernible here. The two acts can well stand together.

It is further urged that the borough has passed an ordinance

which forbids the tearing up of its roads without a permit in writing approved by two members of the street committee, and that such a permit has not been obtained by the gas company. The Borough act of 1897 authorizes the borough council to prescribe the manner in which corporations or individuals may exercise any privilege granted to them in the use of any street. This statute plainly authorizes regulation, not prohibition. Consequently an ordinance authorizing the street committee arbitrarily to refuse a permit is invalid. *North Hudson County Railway* v. *Hoboken, 12 Vr. 75; Allen* v. *Jersey City, 24 Vr. 523; Summit Township* v. *New York and New Jersey Telegraph Co., 12 Dick. Ch. Rep. 124.*

The injunction should be denied.